*United States v. Felton*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-one.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> MICHAEL H. PARK,
> > *Circuit Judges*.

_____

United States of America,

> *Appellee*,

> v.                                                      19-3352

James Diaz, AKA Chunky, Andre Felton, AKA Dre,
Ezekiel Burley, AKA Ezekiel McCall, AKA Zeke,
AKA Ziggy, Uriah Brown, AKA Scooter,
Bradford Cannon, AKA Brad, Willie Reeves,
AKA Willie Reed, AKA Willow, Harold Fields,
AKA Howie, Robert Brent, AKA Ready,
Dashaun McDonald, AKA Dayday, Matthew Torres,
AKA Mac Mittens, AKA Green Eyes, Tyrone Turner,
AKA Skrap, Kendrick McCray, AKA Kenny, Ginger Diaz,
Jose Sandoval, AKA Shorty, Derrick Moore,

> *Defendants*,

James Felton,

                    *Defendant-Appellant.*

_____

FOR APPELLEE:                              FRANK J. BALSAMELLO, Assistant United States Attorney (Anden Chow, Matthew J.C. Hellman, and Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:          DEVIN MCLAUGHLIN, (Lloyd Epstein, Epstein & Weil LLC, New York, NY, *on the brief*), Langrock Sperry & Wool, LLP, Middlebury, VT.

Appeal from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant James Felton appeals from a judgment of conviction, entered on October 8, 2019, by the United States District Court for the Southern District of New York (Pauley, *J.*). Following a seven-day jury trial, Felton was convicted of murder in aid of racketeering and murder while engaged in a narcotics conspiracy, as well as firearm offenses, conspiracy to distribute narcotics, and related crimes arising from his involvement in drug trafficking in the Bronx and the murders of Marvin Harris and Jose Morales. The district court sentenced him principally to life plus seventy-five years' imprisonment. We assume the parties' familiarity with

2

the underlying facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

Felton's sole contention on appeal is that the district court violated his rights under the U.S. Constitution when, during *voir dire*, it chose not to ask prospective jurors about implicit, or unconscious, racial bias.[1]   Specifically, Felton asserts that the district court violated his Sixth Amendment right to a trial by an impartial jury when it declined to ask his proffered *voir dire* question concerning implicit racial bias.   We disagree.

It is well settled that "[v]oir dire is necessarily a matter in which the trial court has extremely broad discretion."   *United States v. Lawes*, 292 F.3d 123, 128 (2d Cir. 2002). "Accordingly, we will not reverse unless we determine that this discretion has been abused."   *Id.*[2] With respect to questions regarding race, in *Rosales-Lopez v. United States* the Supreme Court made clear that "there is no *per se* constitutional rule . . . requiring inquiry as to racial prejudice [during *voir dire*]."   451 U.S. 182, 190 (1981) (plurality opinion).   Instead, "[o]nly when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion."   *Id.*

---

[1] As defined by Felton's trial counsel in their requested *voir dire* questions for the district court, "[u]nconscious biases are stereotypes, attitudes or preferences that people may consciously reject but may be expressed without conscious awareness, control or intention.   Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions."   App'x at 29.   Of particular relevance to this case is what Felton, who is Black, describes as the "unconscious, associational link between Black males and crime."   Appellant's Br. at viii.

[2] The parties dispute whether the abuse-of-discretion or plain-error standard of review applies in this case. We need not resolve this disagreement, however, because Felton's challenge to the district court's questioning during *voir dire* fails even under the abuse-of-discretion standard.

3

Similarly, in *Ristaino v. Ross* the Supreme Court held that, even though the case involved allegations of interracial violence, the failure to ask questions about racial prejudice in *voir dire* did not violate the U.S. Constitution because "[t]he circumstances . . . did not suggest a significant likelihood that racial prejudice might infect [the defendant's] trial." 424 U.S. 589, 598 (1976). In such circumstances, the Constitution is "satisfied by [a court's] more generalized but thorough inquiry into [juror] impartiality." *Id.*; *see also Ham v. South Carolina*, 409 U.S. 524, 526–27 & n.2 (1973) (noting, in a case where a question regarding race was required, that the constitutional requirement could be satisfied by a "brief, general question[,]" such as "Would you fairly try this case on the basis of the evidence and disregarding the defendant's race?").

Apart from the requirements of the Sixth Amendment, the Supreme Court has emphasized that, pursuant to its "supervisory authority over the federal courts," district courts generally should question prospective jurors about racial prejudice in any instance where a criminal defendant requests such questioning. *Rosales-Lopez*, 451 U.S. at 190–91; *see also Ristaino*, 424 U.S. at 597 n.9 ("[T]he wiser course generally is to propound appropriate questions designed to identify racial prejudice if requested by the defendant."); *accord United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994). "Failure to honor [a defendant's] request [in this context], however, will be reversible error only where the circumstances of the case indicate that there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury." *Rosales-Lopez*, 451 U.S. at 191.

Here, Felton does not argue that a question on racial prejudice was constitutionally mandated under the circumstances of this case based upon the holdings of *Rosales-Lopez* and *Ristaino*. Instead, Felton urges this Court to "question the continuing validity" of these Supreme

4

Court decisions because, in Felton's view, "[f]rom the perspective of 2020, the *Rosales-Lopez* and *Ristaino* holdings are untenable." Appellant's Br. at ix–x. Felton's request that we "[r]econsider," *id.* at 16, these binding Supreme Court decisions is a non-starter because it is axiomatic that "[w]e cannot overrule the Supreme Court," *Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005), *overruled on other grounds by McDonald v. Chicago*, 561 U.S. 742 (2010); *accord State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents.").

In any event, the district court here *did* question the potential jurors on the issue of racial prejudice. First, the district court explained to prospective jurors that the purpose of *voir dire* is to "select fair and impartial jurors; that is, jurors who are free from *preconceived notions or prejudices* that might prevent them from returning a fair and just verdict based solely on the evidence or the lack of evidence." App'x at 49 (emphasis added); *see also id.* at 52 ("Jurors are required to make their decisions solely on the basis of the evidence presented at trial or the lack of evidence and not on the basis of conjecture, suspicion, sympathy, *or prejudice, for or against, any party*." (emphasis added)). Then, as it related specifically to Felton, the district court warned the venire that "it would be improper for any of you to consider any personal feelings you may have about a defendant's race, religion, national origin, sex, or age" and immediately asked whether "any prospective juror [would] have any difficulty putting aside any feelings, positive or negative, about the defendant, Mr. Felton, based on these considerations[.]" *Id.* at 58. Moreover, towards the end of *voir dire*, the district court again asked a question, in a broad and open-ended manner, to the prospective jurors about potential prejudice:

5

> Based on everything that we've discussed up to this point in time, do any of you have the slightest doubt in your mind for any reason whatsoever that you'll be able to serve conscientiously, fairly and impartially in this case and to render a true verdict without fear, favor, sympathy or prejudice and according to the law, as I'll instruct you?"

*Id.* at 112. Importantly, in *United States v. Treacy* we recognized that "a district court may find that warning a jury against an improper bias may be more effective in some cases than inquiring about that bias." 639 F.3d 32, 47 (2d Cir. 2011). Here, the district court did both, and on more than one occasion.

To the extent Felton argues that the U.S. Constitution or the Supreme Court's supervisory mandate required the district court to also ask a specific question on *implicit* racial bias, we disagree. As we have explained, "[v]oir dire is of course an important part of trial proceedings, but federal trial judges are not required to ask every question that counsel—even all counsel— believes is appropriate." *Lawes*, 292 F.3d at 128; *see also Ham*, 409 U.S. at 527 ("[T]he trial judge was not required to put the question [concerning racial prejudice] in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by [defendant]."). In fact, in *Lawes*, we noted that this Court had "never . . . reversed a conviction for the failure to ask a particular question on the voir dire of prospective jurors," and Felton has pointed to no case since where we have done so. 292 F.3d at 129; *accord Treacy*, 639 F.3d at 46. Therefore, "[w]e do not minimize the importance to criminal defendants of removing the possibility of racial bias on the jury," but rather re-emphasize that "[h]ow best to do that . . . is primarily left to the broad discretion of the district court." *United States v. Taylor*, 92 F.3d 1313, 1324 (2d Cir. 1996). Given the circumstances of this case, the district court did not err under any

6

standard in determining that the questions and warnings it posed during *voir dire* were sufficient to explore the issue of racial bias with prospective jurors.

*         *         *

We have considered all of Felton's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court